## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Jason Webb** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Civil Action No.** |
| | ) |
| **Dr. Pepper Snapple Group** | ) |
| **A subsidiary of Keurig Dr. Pepper** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Jason Webb (hereinafter, "Plaintiff") moves the Court for entry of judgment in his favor against the named Defendant and in support of such Complaint avers as follows:

## PARTIES, JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under and pursuant to federal law specifically, the Americans with Disabilities Act (hereinafter, "ADA") and Title VII (hereinafter "Title VII"). Moreover, this Honorable Court has jurisdiction over Plaintiff's state law claims under the Pennsylvania Human Relations Act (hereinafter "PHRA") to the extent that he pleads them pursuant to 28 U.S.C. §1367.

2. Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

3. Plaintiff brings this action against his former employer, Dr. Pepper Snapple Group (hereinafter, "DPS") a subsidiary of Keurig Dr. Pepper.

4. Plaintiff is an adult male who, at all relevant times hereto, resides in the Commonwealth of Pennsylvania, York County, and was employed by DPS.

5. DPS is a producer and distributer of hot and cold beverages and has a distribution center location at 1371 Center Mills Road Aspers, PA 17304.

## UNDERLYING FACTS

6. Plaintiff commenced employment with DPS on or about February 2018 as a Machine Operator.

7. Plaintiff is a 40-year-old male who has suffered anxiety attacks from the age of 18 years of age. Plaintiff also suffers from depression and Migraine headaches.

8. During March 2018, Plaintiff had an anxiety attack before he went to work and was forced to call off due to his need to go to the hospital.

9. On the same day of the attack, Plaintiff called work, while in the hospital, to notify them that he was experiencing anxiety attacks and was in the hospital.

10. Plaintiff was in the hospital for two (2) days for anxiety.

11. Upon returning to work, Plaintiff was told by his supervisor, Tyron Leppo, that he would receive a point for the day he went to the hospital despite giving the Defendant a doctor's note. Defendant employs a "no fault" attendance system for all hourly employees such as the Plaintiff.

12. The Defendant allowed Plaintiff to use a vacation day for the second day he was in the hospital.

13. On or about March 14, 2018, the Plaintiff experienced another anxiety attack while at work.  The Defendant called an ambulance and Plaintiff was transported to Gettysburg Hospital.

14. Plaintiff was in the hospital for two (2) days for anxiety.

15. Upon returning to work, Defendant gave the Plaintiff a ½ point for leaving early on March 14, 2018.

16. Plaintiff was dealing with custody issues during his tenure with the Defendant. Each time he was scheduled for a court appointment due to the custody hearings, he would receive a point, although he was required to be in court. This created more stress and anxiety for the Plaintiff.

17. In the beginning of July 2018, Plaintiff was rushed to the hospital from his home and contacted the Defendant two (2) hours before his scheduled start time. Plaintiff was admitted overnight and stayed in contact with Mr. Leppo, yet the

Defendant gave him another point for being absent from work despite the medical emergency.

18. After returning to work, Plaintiff had an episode where he felt like he was going to pass out due to medication changes, anxiety and depression.  The nurse onsite called an ambulance to rush Plaintiff to the Gettysburg Hospital. The acting supervisor, "Adrian B", was also present.  Plaintiff remained in the hospital until the next day.

19. Although the Plaintiff provided the Defendant with a doctor's note, he was still given a point for his absence.

20. In or about May 2018, a co-worker named "Alfredo" began to harass the Plaintiff asking questions about his sexual preference although the Defendant and Alfredo knew Plaintiff was gay.

21. Alfredo would ask the Plaintiff if he got "f**ed" in the ass too hard since he was walking funny. Alfredo also asked the Plaintiff if he "took a big cock in his ass."

22. Alfredo also questioned the Plaintiff asking if he liked "it" (referring to sex) on top or the bottom, or whether he just liked "sucking off" the guys.

23. A male whom worked with the Defendant was fired from the company for sexually harassing a female just a few months before Plaintiff reported his allegations of harassment.

24. The sexual harassment caused great emotional distress for Plaintiff since he was in a committed, monogamous relationship with his husband and they both cared for their children in their home.

25. Plaintiff notified Human Resources Manager Michelle Pritchard and his trainer, Josh Brown, about the sexual harassment on or about May 23, 2018, as per company policy.

26. Ms. Brown informed Plaintiff that he was free to leave for the day but would lose his pay.

27. Plaintiff could not afford to go a day without pay so he chose to stay at his jobsite.

28. The Defendant subsequently interviewed Alfredo about the harassment.

29. Following the alleged investigation, HR concluded that the claims were unsubstantiated and reminded Alfredo that the Defendant does not tolerate sexual harassment or discrimination in any form.

30. The Defendant also advised Alfredo that he should refrain from having any contact with the Plaintiff unless it was a business necessity.

31.  Defendant concluded its investigation on June 7, 2018.

32. Defendant returned Alfredo to work without any formal discipline.

33. Plaintiff subsequently experienced another anxiety attack on June 29, 2018 and informed the Defendant of the same. When Plaintiff returned to work he received a point for the absence on June 29, 2018.

34. Plaintiff avers a male whom harassed a female a few months before Plaintiff's allegations of sexual harassment was fired due to the harassment.

35. At or near the time the investigation was being conducted, Plaintiff interviewed for both a Production Supervisor's position and a Warehouse lead position.

36. Plaintiff was told that he was not qualified for one of the positions because he did not have the technical/mechanical skills, however, other supervisors are not required to have the same skill set.

37. Plaintiff was told he was not qualified for the Warehouse Lead position because he did not have the necessary leadership skills.

38. Further, Plaintiff was told that the Defendant would provide him online training for the essential skills in July 2018.

39. However, Defendant never offered any training thereafter.

40. A few days later, Plaintiff experienced an anxiety attack when he was undergoing a family emergency with his teenage son.  He left a message for his supervisor comprising him of the situation.

41. HR said that since the Plaintiff gave two (2) different reasons for his absence, it would be classified as two (2) different matters and therefore a two-point deduction.

42. At no time did the Defendant or its agents tell the Plaintiff the amount of points he had (as they are required to do per company policy) until he was informed on the day of his termination.

43. Plaintiff returned to work the following day of his absence and was promptly terminated for excessive absences including the absences which should have been designated as disability related accommodations.

44. However, Defendant never interacted in good faith about an accommodation for Plaintiff's medical absences at any time during the time frame of his absences.

45. Once more, Defendant failed to properly and fully investigate the sexual harassment claims of the Plaintiff in good faith or to correct and/or remedy the harassment as per its policy and as under the law.

46. Plaintiff filed his application with the PHRC on August 8, 2018 and his Complaint on May 6, 2019 with amendments shortly thereafter.

47. On December 12, 2019, the Plaintiff was issued a right to sue letter, see attached as Plaintiff's Exhibit A.

48. Defendant DPS is liable for the actions of its agents under the doctrine of *Respondeat Superior*.

## COUNT 1
## ADA/PHRA DISCRIMINATION

49. Plaintiff incorporates herein the previous averments as if fully set forth.

50. The Plaintiff is a qualified individual with a disability under the ADA/PHRA due to his anxiety, depression and panic disorder and DPS's notice of the same.

51. The Plaintiff had a record of disability and/or was regarded as disabled by DPS.

52. The ADA/PHRA prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace.

53. Plaintiff's requested an accommodation pursuant to state and federal law, i.e. medical leave accommodations sought due to medical emergencies.

54. DPS failed to accommodate Plaintiff's disability and instead, it disciplined him when he sought leave accommodations for medical reasons related to his disability.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA/PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering, applicable punitive damages under the ADA (only) as will be proven at trial and all reasonable attorney's fees and costs of litigation.

## COUNT 2
## ADA/PHRA RETALIATION

55. Plaintiff incorporates herein the previous averments as if fully set forth.

56. The ADA/PHRA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

57. The Plaintiff's requests for an accommodation in the workplace constituted "protected activity" pursuant to state and federal law.

58. DPS retaliated against the Plaintiff on account of his protected activity when it disciplined him after he sought medical leave related to his disability and for medical emergencies.

59. Furthermore, Plaintiff avers that DPS's purported basis to discipline and terminate him (e.g. excessive absences) is false and erroneous and a pretext for underlying invidious reasons.

60. As a result, the Plaintiff avers that DPS retaliated against him on account of his protected activity by imposing discipline and by terminating his employment.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA/PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering, applicable punitive damages under the ADA (only) as will be proven at trial and all reasonable attorney's fees and costs of litigation.

## COUNT 3
## TITLE VII/PHRA – GENDER – HOSTILE WORK ENVIRONMENT

61. Plaintiff incorporates herein the previous averments as if fully set forth.

62. From on or about May 2018, Plaintiff was subjected to sexual harassment in the workplace by Alfredo as more fully described above.

63. The events and circumstances described above (hereinafter ""unlawful sexual harassment") were severe and/or pervasive.

64.The unlawful sexual harassment, as more described above, was uninvited, unwelcomed and unwanted by the Plaintiff.

65. The unlawful sexual harassment was offensive to the Plaintiff and would have been offensive to a reasonable person under similar circumstances.

66. Plaintiff opposed the unlawful sexual harassment advising that he found this conduct offensive and requesting that it cease, reporting it directly to his supervisors and HR.

67. Defendant thereafter failed to conduct a good faith investigation of the reported harassment but instead took no action to discipline the perpetrator.

68. However, Defendant has fired non-gay males for sexual harassment when it was a woman that was being sexually harassed.

69. DPS owed a duty to its employees, including the Plaintiff, to ensure a workplace free from sexual harassment and discrimination.

70. Despite DPS's knowledge of the unlawful sexual harassment perpetrated by Alfredo and directed to the Plaintiff, it failed to exercise reasonable care to correct, prevent or remedy the unlawful sexual harassment in the workplace.

71. The unlawful sexual harassment was sufficiently severe as to create a hostile and abusive environment for the Plaintiff from the time of the inception of the harassment to the date of his termination.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to Title VII/PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering, applicable punitive damages under the Title VII (only) as will be proven at trial and all reasonable attorney's fees and costs of litigation.

## COUNT 4
## TITLE VII/PHRA – GENDER RETALIATION

72. Plaintiff incorporates herein the previous averments as if fully set forth.

73. Plaintiff's protected class is sex, male.

74. The PHRA and Title VII prohibit retaliation in the workplace against employees who have, *inter alia*, complained of sexual harassment in the workplace and who have otherwise opposed practices made unlawful under the law.

75. On or about May 2018, Plaintiff was sexually harassed by Alfredo as more fully described above. Further, on or about August 3, 2018, approximately three (3) months after Plaintiff complained of said harassment, he was terminated.

76. As more fully described above, and herein, Plaintiff sought promotions within DPS after complaining about the alleged sexual harassment of Alfredo. However,

11

Plaintiff was denied promotion and told instead that he would be offered online training in or about July 2018.

77. Defendant never provided said online training that had been promised but instead fired the Plaintiff less than a month after promising training.

78. Furthermore, as more fully described above, Plaintiff opposed and rejected the unlawful sexual harassment advising that he found the conduct offensive and inappropriate and requesting that it cease, and that Defendant take prompt action to remedy the matter.

79. Plaintiff's opposition of, rejection of and reports/complaints of sexual harassment in the workplace constituted "protected activity" pursuant to state and federal law.

80. DPS retaliated against the Plaintiff on account of his protected activity, including but not limited to the following:

81. Failing to provide Plaintiff with employment conditions and relationships ensuring a safe workplace free from sexual harassment, discrimination and retaliation.

82. Failing to respond, correct, and/or remedy Plaintiff's complaints of sexual harassment in the workplace.

83. Failing to investigate Plaintiff's complaints of sexual harassment in the workplace.

84. Permitting the Plaintiff to be subjected to sexual harassment in the workplace and otherwise causing him to endure a hostile and abusive work environment.

85. Failing to exercise reasonable care to prevent, correct, or remedy unlawful sexual harassment in the workplace.

86. Falsely accusing Plaintiff of misconduct and/or inappropriate behavior at work.

87. Intentionally interfering with Plaintiff's ability to perform his job.

88. Refusing to hire Plaintiff for open positions for which he was qualified due to his report of sexual harassment.

89. Terminating Plaintiff's employment without cause effective on or about August 3, 2018.

90. Furthermore, DPS possessed no legitimate business reason to terminate Plaintiff's employment.

91. Plaintiff further avers that DPS's purported basis to discharge his employment (e.g. excessive absenteeism) was false and erroneous.

92. As a result of all the above, Plaintiff avers that DPS retaliated against Plaintiff on account of his protected activity by terminating his employment effective on or about August 3, 2018.

93. The termination of Plaintiff's employment constitutes an adverse employment action.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to Title VII/PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering, applicable punitive damages under the Title VII (only) as will be proven at trial and all reasonable attorney's fees and costs of litigation.

Date: 2/4/2020                                    Respectfully submitted,

                                                  DONHAM LAW

                                                  By: /s/ Jeremy A. Donham, Esquire
                                                  Jeremy Donham, Esquire
                                                  Attorney I.D. No. 206980
                                                  PO Box 487, Dellslow, WV 26531
                                                  717.881.7855 (phone)
                                                  888.370.5177 (fax)